Smead, Collord, & Hughes *vs.* George W. Burnet et al.

In Special Term—December 1854.

GHOLSON, J. presiding.

SMEAD, COLLORD, & HUGHES *vs.* GEORGE W. BURNET et al.

Under Section 449 of the Code, the Court has power to order upon a proper showing, in a joint action against the acceptor and drawers of a bill of Exchange, that the judgment shall be entered against the drawers as principals, and the acceptor as security.

Motion to set aside an amended entry of a judgment.

This was an action against George W. Burnet, as the acceptor, and Edward M. Gregory and William Burnet as drawers of two bills of exchange. Upon a showing to the Court, and by agreement of the plaintiffs and George W. and William Burnet, the judgment was entered, so as to show, that Gregory and Burnet were the principals, and George W. Burnet the surety for the debt due. This was done by an amendment, after the entry of the judgment had been made. Gregory, as to whom the judgment had been entered by default, now appeared, and moved to set aside this amended entry. It was claimed on his behalf, that the Court was not authorized to examine into the relation of the parties at the time of the making of the bills of exchange ;—that their position was fixed by the mode in which they had signed them ; and that the acceptor cannot be deemed a surety for the drawers.

GHOLSON, J.

The whole question depends upon the proper construction of Section 449 of the Code. The origin of this Section is to be found, in the act regulating judgments and executions, passed Feb. 24, 1820, 2 *Chase* 1145, and the same provision, slightly modified but, perhaps, without any substantial change, has been continued to the present time.

Contemporaneous with the original adoption of this provision, the substance of which is, that the property of the principal debtor, without regard to the form of the contract, shall be first appropriated to the payment of the debt, was passed the act to regulate proceedings where banks and bankers are parties. 2 *Chase* 1068, 1134. By that act a joint action in behalf of banks and bankers against the drawers and endorsers of bills, notes, or obligations was authorized.

In an early decision in the Ohio Reports, Douglass *vs.* Waddle, 1 *Ohio* 413, it is said by the Court that the Section of the act regulating judgments and executions which allows parol proof, that one or more of the defendants signed a note as sureties, has been uniformly understood as applying to the endorsers on accommodation notes; that they " have so applied it, and this could be done upon no consistent principle, but that of considering such endorsers as sureties." It will be seen that this was not the question decided in Douglass *vs.* Waddle; it was only referred to, as the settled construction placed upon the two statutes, and was assigned in the course of the decision, as a reason for the real point decided in the case. The point really decided was, that all the sureties on accommodation notes were to be treated as co-sureties, without reference to the order in which their names stood.

It may be questioned, whether what was stated to be the settled construction of the statutes, to allow the certificate of suretyship to be made in joint actions against the makers and endorsers of notes, necessarily established a joint suretyship. The equity of the statute might, perhaps, have been just as well answered, by considering that those who signed the paper, stood in respect of their lia-

Smead, Collord, & Hughes *vs*. George W. Burnet et al.

bility to each other, as their names appeared on the paper, though they might all stand in the relation of sureties to the party, for whose accommodation they became bound.

Accordingly, in the subsequent case of Williams *vs*. Bosson, 11 *Ohio* 62, the Supreme Court restricted the application of the principle decided in Douglass *vs*. Waddle, to promissory notes, and refused to extend it to bills of exchange. But the reasoning of the Court in Williams *vs*. Bosson, in no respect, extends to what was stated in Douglass *vs*. Waddle, to have been the construction of the Section of the act regulating judgments and executions, and its application to joint actions, brought under the Section of the act to regulate proceedings where banks and bankers are parties. If that construction be correct, as the latter Section authorizes joint actions against the drawers and endorsers of bills of exchange, so the power to receive parol proof, and direct a certificate of surety-ship must apply to bills of exchange, as well as to promissory notes.

Prior to the provision in the act regulating proceedings, where banks and bankers are parties, a joint action could not be maintained against parties severally liable on a bill or note. By that act, passed February 5, 1819, 2 *Chase* 1068, and re-enacted February 18, 1820, 2 *Chase* 1134, banks or bankers were allowed to bring a joint action against the drawers and endorsers of bills, notes, or obligations. The 8th section of the act regulating judgments and executions, passed 24th February 1820, and which first authorized a certificate, showing which of the defendants was the principal debtor and which the sureties, applied to instruments of writing, "in which two or more persons are jointly or severally held and bound."

35

It may well be said, in support of the construction refer-
red to in Douglas *vs.* Waddle, that the expression *jointly
or severally*, must have been used with reference to the
joint action against parties severally and not jointly bound,
as authorized by the act in relation to banks and bankers.

It is true, the expression "jointly or severally," which
it is probable may have been carefully used in the first
enactment, was in the subsequent revisions of the statute
changed into "jointly and severally." This, from the fact
of the latter expression, being one in more ordinary use,
might well have been expected, in any re-drafting of the
statute; but, surely, it cannot be contended that such a
change of expression would alter the settled and established
construction of the statute : would take from its operation
an important class of cases, clearly within its spirit.

In forming our new Code of procedure, many portions
of the statutes, regulating the practice of the courts, have
been engrafted. The construction, which those statutes had
before received, may, in many cases, be modified and
changed, by the consideration, that they form a part of a
new and connected system, with the other provisions and
the spirit of which they must be brought into harmony.
The former rule of construction will not, therefore, necessa-
rily apply. But I do not think there is any hazard in say-
ing, that few instances, if any, will be found, in which such
statutes will be given a more restricted and confined opera-
tion than they had before, when their intent is to enforce
a just and equitable principle.

The statutes and decisions, to which I have referred, es-
tablish the proper rule of construction, applicable to Section
449 of the Code, and there appears no reason to doubt,
that the enquiry, which it authorizes as to the situation of

the parties to bills of exchange and promissory notes, in respect of some being sureties for the others, may be made in this case. The enquiry is to be made, (since by the Code an acceptor can be joined with the other parties, and his situation is the same as that of a maker of a note,) by "parol or other testimony." And this, it seems to me, can only apply, and must be deemed to apply, to those cases where some have signed the paper, for the benefit and at the request of others, particularly embracing what is termed "accommodation paper." That the term *sureties*, (whether in its true, strict, and proper sense, or not, can make no difference,) has been and may well be applied to persons so situated, might be shown, I think, by respectable authorities both in England and this country. And in this view, the maker of a note may be surety to the endorser; and the acceptor to the drawer. It was of such sureties, that in a very recent case in England, Manley *vs*. Boycot, 2 *El. & B.* 75, *E. C. L.* 46–56, Lord Campbell spoke.: " Cases in which it can be proved that, at the time when a note was made, or a bill accepted and handed over to the payee, the maker or acceptor being only a surety, the payee, knowing this fact, agreed to receive it from the maker or acceptor as surety only, may admit of a different consideration ; and, consistently with our judgment, it may be held in such cases, that the maker or acceptor is discharged by time being given to the principal debtor." .

The present question does not, under the language of Section 449 of the Code, appear to depend on the knowledge of the plaintiff, at the time he received the bills, of the actual relation between the parties. How far such an inquiry may become important, in any case, I need not decide. For, surely, the defendant, who makes this motion,

cannot be permitted to throw on his surety the burthen of first meeting the debt, by setting up a claim on the part of the plaintiff, which has been by him expressly waived.

That the defendant, George W. Burnet, was *in the* sense explained above the surety, and Gregory & Burnet the principal debtors, there is not, on the proof exhibited, the slightest doubt. They received the benefit, justice requires that they should meet the burthen; and being satisfied that such is the law, I shall overrule the motion.

SCARBOROUGH for the motion.    MATTHEWS contra.