SECURITY SAVINGS BANK, Appellee, v. R. E. PEDDICORD, Appellant, et al., Appellee.

PRINCIPAL AND SURETY: Contribution by Cosurety. A surety who, prior to renewing his surety obligation, exacts indemnity from the principal, may hold the same against a cosurety who, when the indemnity was given, refused to participate therein or consent thereto.

*Appeal from Dallas District Court.*—LORIN N. HAYS, Judge.

·JUNE 22, 1923.

ACTION to determine the right of contribution between two sureties on certain promissory notes executed in lieu of a prior written guaranty signed by the same parties. The issues arise on the cross-petition of the defendant Eveland against his co-defendant Peddicord. The opinion sufficiently states the facts. The issues raised by the cross-petition were determined in favor of the defendant Eveland. Defendant Peddicord appeals.— *Affirmed.*

*E. W. Kingwell* and *Harry Wifvat,* for appellant.

*S. Trevarthen* and *George J. Dugan,* for appellees.

DE GRAFF, J.—On April 14, 1920 a partnership known as Shearer Brothers to obtain credit with the plaintiff, The Security Savings Bank of Perry, Iowa, procured a written guaranty signed by the defendant-appellant Peddicord and the defendant-appellee Eveland. This guaranty was for a sum not to exceed $5,000, and upon the execution and delivery of the instrument to the bank Shearer Brothers obtained credit in that sum. The guaranty extended up to and including October 1, 1921. In November 1920 the president of the bank notified Shearer Brothers that it would be necessary to change the guaranty to bankable paper in order to have the privilege of discount with the Federal Reserve Bank. Two notes each in the sum of $2,500 were prepared, and these notes were signed by appellant Peddicord on November 27, 1920 and by Eveland on January 5, 1921.

As a condition precedent to attaching his signature to the notes Eveland required the execution and delivery by Shearer Brothers of an assignment of the proceeds of a certain policy of fire insurance in the sum of $2,500. Prior to its execution Eveland requested Peddicord to attach by garnishment the insurance money, but the latter refused to do this stating in effect that he did not wish to offend Shearer Brothers as the indebtedness would be taken care of by the primary debtor.

This action was instituted by the bank against the makers of the two notes. Defendant Eveland filed a tender of one half the amount due on said notes. Defendant Peddicord filed a motion to transfer the cause to equity which the trial court sustained. Eveland filed an answer to plaintiff's petition and also a cross-petition against his codefendant Peddicord in which he admitted he signed the notes but alleged that his only reason was that prior to his signing he had demanded and received an assignment for $2,500 from Shearer Brothers which represented the proceeds of an insurance policy due the Shearer Brothers by reason of a fire occurring about December 30, 1920. He further alleged that he had never received any benefit from the signing of the notes but that all of the proceeds from the notes were taken and used for the sole benefit of Shearer Brothers and that the assignment was taken to protect him in signing said notes and that the same was given to him for his protection alone and was not for the benefit of the comaker Peddicord.

It is also alleged that by the refusal of Peddicord to join with him in an attempt to secure the assignment of the insurance proceeds and by his acts and statements at the time of the refusal and afterwards the defendant Peddicord waived all claim and right to any benefit under or through the assignment and was estopped to make any claim under the assignment which was made for the sole use and benefit of Eveland.

An answer to the cross-petition was filed by Peddicord in which he denied he had refused to join in the assignment, denied he was ever asked to take part or be a party to the assignment, but did admit that Eveland asked him to join with him in an action for attachment of the insurance money and that he had refused so to do. All parties to the transaction were on motion made parties to the action and an accounting was prayed between all the parties.

The primary question involved on this appeal is whether the insurance money is held for the sole use and benefit of Eveland. The trial court by decree made answer to this proposition in the affirmative. Peddicord appeals. The legal principle is not in serious controversy and the case therefore turns on the fact side.

Did the trial court correctly rule that the assignment in

question was given by Shearer Brothers for the sole benefit of the appellee Eveland? Was the giving of the assignment the consideration for the signing of the notes by Eveland? Does the assignment inure to the joint benefit of appellant Peddicord? These questions in turn must be answered by the determination of other questions suggested by the record.

Did the change in form of obligation create a new and different liability? Clearly the making of the notes created a direct obligation to the bank. It also changed the date of the maturity of the obligation. There can be no question as to the consistent position taken by Eveland at all times in relation to his signature to the notes and the assignment of the insurance proceeds. At the time that he demanded security before signing the new obligation and subsequently thereto he recognized that he was obligated to the bank under the terms of a specific contract. The notes created a distinct and different obligation and changed the form of the indebtedness.

We cannot escape this conclusion. The record fairly supports the contention of Eveland that he had reiterated his refusal to sign the new obligation unless he was secured and that his cosurety had refused to join in the demand. Peddicord knew at the time the demand was made by Eveland that the contemplated assignment could be made to protect both of the sureties, but he refused to take part in the arrangement.

In one conversation in relation to this matter the record discloses the following: "Q. They said, 'We will take this [assignment], and that will protect both of us up to about $3,700?' A. Yes, sir. Q. And you said: 'No, I don't want to do that; it will make the boys mad. They will pay this all right.' A. Yes, sir."

Eveland refused to sign the note and was seeking to secure Peddicord's acceptance of the condition which would afford certain protection to both of them. Eveland was under no legal obligation to sign the notes, and it was his privilege to insert a condition to secure his protection. If the indemnity secured was secured by and for his sole protection and contrary to the wishes or desire of his surety on the original obligation under what principle of equity is the appellant Peddicord now entitled to assert his claim?

In *Chapman v. Garber*, 46 Neb. 16 (64 N. W. 362), the facts disclose that one of the sureties limited his obligation as a surety on a new note by a guaranty that the note was good and collectible. It is said: "When the last one [note] was executed, the principal and plaintiff attached their signatures to it, and it was then entrusted to the principal, to obtain that of the defendant, who refused to again sign as surety, but signed it in the manner herein shown, and not so as to be liable to plaintiff as a cosurety; and the note was then delivered to the bank. * * * The defendant had the right to refuse to sign the last note, or to sign it in the manner or with such restrictions as to liability as he chose or desired to make, and the plaintiff [a former cosurety] cannot recover against him in this action as a cosurety."

The signing of the note in the instant case created a different liability and a new suretyship agreement. Clearly a surety when he joins in a new obligation or liability has a right before incurring that obligation or liability to demand and receive indemnity without the right of a cosurety to participate therein.

Counsel for appellant urge for our consideration the case of *Hoover v. Mowrer*, 84 Iowa 43 but the principle announced is not controlling under the facts of the case at bar. It would in certain cases be inequitable for a principal to indemnify one of the sureties and relieve him of the burden which the other surety carried. However, if this is done with the knowledge and consent of the other surety or he refuses to join in securing the indemnity he is not in a position to complain. Risk and relief must be coextensive. The risk must be a common one. The right of contribution among sureties is not predicated on the contract, but it is based on the maxim of equity that equality is equity among persons who stand in the same relation or situation. Unless it may be said that the appellant Peddicord stands in the same situation as does the appellee Eveland the principle stated does not apply.

A person about to become a surety with others has the right to stipulate with the principal that a separate indemnity for his own benefit must be given, and in the absence of imposition or fraud or a sufficient showing that it was intended for the benefit of all the agreement is valid and inures for the sole

benefit of him who secured it. It will be found upon an examination of the cases in which the indemnity is applied to the common benefit of all the sureties that the indemnity was procured subsequently to the execution of the primary obligation. In the instant case before the appellee had any relation with the appellant as to his obligation on the notes and before he would assume any legal responsibility thereon he stipulated with the principal for a separate indemnity. The appellant has no right to complain of an act of precaution which he might have availed himself had he so wished. The obligation of the appellee on the notes which was a different obligation than that created by the prior written guaranty did not exist before the execution of the indemnity by the assignment of the insurance proceeds. Until that relation exists a surety has the right to look out for his own separate indemnity; thereafter, the procuring of a contract of indemnity is and ought to be for the common benefit.

It may also be observed that if two persons have become sureties for a common principal, they may by agreement between themselves, renounce their right to take benefit from any securities they may respectively obtain, and each look out for himself exclusively for an indemnity from the principal, or for contribution. See *Commissioners of McDowell County v. Nichols*, 131 N. C. 501 (42 S. E. 938, 92 Am. St. 785).

From a full and fair consideration of the facts presented by the record we conclude that the trial court correctly decided the case and rightfully rejected the claim of the appellant to participate in the assignment. The judgment and decree entered is therefore—*Affirmed.*

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.